UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEPTALIA PADILLA and VALENTIN FARIAS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-2941-B |
| ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY and RYAN HOHLIER, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Allstate Fire and Casualty Insurance Company (Allstate) and Ryan Hohlier's Motion for Summary Judgment. Doc. 24. For the reasons that follow, the Court **DENIES** Defendants' Motion.

**I.**

**BACKGROUND**[1]

This case arises from a claim for insurance benefits. On April 4, 2016, Plaintiffs Neptalia Padilla and Valentin Farias (Plaintiffs) filed a claim under their homeowners' insurance policy with Allstate for wind and hail damage to their property. Doc. 25, Defs.' Br., 4. On April 10, 2016, Allstate sent one of its adjusters, Ryan Hohlier, to Plaintiffs' home to inspect the damage. *Id*. Mr. Hohlier found damage to the dwelling roof, shed roof, several windows, the back fence, the back

---

[1]The Court draws its factual history from the pleadings and the summary-judgment record. Any contested fact is identified as the contention of a particular party.

-1-

deck, an AC unit cover, the pergola, and the carport. *Id*. His assessed actual-cash-value damages totaled $19,132.24. *Id*. After subtracting the plaintiffs' $9789.70 deductible, recoverable depreciation of $801.61, and non-recoverable depreciation of $3786.16, Allstate issued the plaintiffs a check for $4754.77. *Id*.

Plaintiffs then filed suit in Texas state court, alleging that Allstate breached the homeowners' insurance policy and asserting causes of action under the Texas Insurance Code and common law against both defendants. Doc. 1, Notice of Removal, Ex. B1. The defendants removed the case to this Court and filed a motion for summary judgment. Doc. 1, Notice of Removal; Doc. 24, Mot. for Summ. J. Defendants ask the Court to grant summary judgment on all of Plaintiffs' claims. *Id*. at 1. Defendants' Motion for Summary Judgment is ripe for review.[2]

## II.

## LEGAL STANDARD

Summary judgment is proper if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material, and only a dispute over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986). The Court must view the facts and the inferences drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec.*

---

[2] After Defendants filed their Motion, Plaintiffs filed a response and Defendants filed a reply. Doc. 27-1, Pls.' Br.; Doc. 28, Defs.' Reply. Plaintiffs then filed a surreply. Doc. 29, Pls.' Resp. But neither the Federal Rules of Civil Procedure nor the Local Rules provide a party the right to file a surreply. And Plaintiffs did not seek leave of the Court to file their surreply. Therefore, the Court declines to consider Plaintiffs' surreply when ruling on this Motion.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Once the summary judgment movant has met his burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). A non-movant may not simply rely on the Court to sift through the record to find a fact issue but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant provides must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 . This evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.

## ANALYSIS

A.    *Breach of Contract*

Plaintiffs claim that Allstate breached the homeowners' insurance policy in two ways. First, they claim that Allstate breached the contract by underpaying Plaintiffs for the hail and wind damage assessed by Mr. Hohlier. Doc. 27-1, Pls.' Br., 8–10. In support of this argument, Plaintiffs attach an estimate from a contractor, Clay Jordan, whom they independently hired to repair the damage to their property.[3] Doc. 27-2, Pls.' App., Ex. B. Plaintiffs point out that Mr. Jordan estimated

---

[3] In their reply, Defendants argue that Mr. Jordan's affidavit is inadmissible because it refers to two different dates on which he assessed the damage, it does not "state conclusively" that the damage he found was damage covered under the policy, and it does not provide proof of the accuracy of the computer program he used to prepare his estimate. Doc. 28, Defs' Reply, 6. But Defendants fail to cite any legal authority for why

significantly higher costs to repair the shed roof, dwelling roof, and back porch than did Mr. Hohlier. Doc. 27-1, Pls.' Br., 9. Defendants contend that there is no dispute that Allstate fully paid Plaintiffs for all of the wind and hail damage to Plaintiffs' property. Doc. 25, Defs.' Br., 7–10.

Second, Plaintiffs claim that Allstate breached the contract by failing to pay for all of the wind and hail damage to property covered under the policy. Doc. 27-1. Pls.' Br., 10–12. Specifically, Plaintiffs claim there was water damage to the interior of their house and parts of the dwelling roof for which Allstate failed to pay them. *Id.* at 10. Allstate responds that its failure to pay for these alleged damages is not a breach of contract because Plaintiffs did not properly include those damages in their insurance claim. Doc. 25, Defs.' Br., 9–10.

To prevail on a breach of contract claim under Texas law, a plaintiff must prove: (1) there was a valid contract; (2) plaintiff performed his or her obligations under the contract; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of defendant's breach. *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Only element three is at issue here. The Court will examine whether summary judgment is appropriate on Plaintiff's' breach of contract claims for underpayment of damages and failure to pay damages separately.

1. <u>Underpayment of Damages</u>

Again, Defendants argue that Allstate fully paid Plaintiffs for all of the damages they properly claimed and all of the damage Mr. Hohlier assessed.[4] Doc. 25, Defs.' Br., 7–10. Plaintiffs contend

---

these alleged defects render the affidavit inadmissible. Defendants make similarly unfounded allegations about the admissibility of Plaintiff Neptalia Padilla's affidavit. *Id.* at 3–5. Thus, the Court considers Plaintiffs' evidence admissible.

[4] Under the policy, the plaintiffs could have recovered the $801.61 in recoverable deprecation subtracted from their total damages if they had submitted proof of repair of damaged items to Allstate. *See* Doc. 25, Defs.' Br., 5–6. In their Motion, Defendants appear to believe that Plaintiffs think Allstate wrongly

that Mr. Hohlier undervalued the costs to repair their damaged property and consequently Allstate did not pay all of the policy benefits owed. Doc. 27-1, Pls.' Br., 8–10. The plaintiffs' contractor, Mr. Jordan, estimated costs to repair the dwelling roof at $10,585.00, costs to repair the shed roof at $799.26, and costs to repair the back deck at $1009.97. *Id.* at 9; Doc. 27-2, Pls.' App., Ex. B. Plaintiffs argue that because Mr. Hohlier estimated only $6341.54 to repair the dwelling roof, $335.78 to repair the shed roof, and $574.20 to repair the back deck Allstate underpaid Plaintiffs for their damages.[5] *Id.* at 9–10. But Plaintiffs fail to acknowledge that for other items included in both estimates Allstate's estimated repair costs were significantly higher. For example, Mr. Hohlier estimated repairs to the fencing at $6017.00 and repairs to the pergola at $2199.20, while Mr. Jordan estimated repairs to the fencing at only $171.00 and repairs to the pergola at $215.50. *Compare* Doc. 27-2, Pls.' App., Ex. B, *with* Doc. 26, Defs.' App., Ex. C. Mr. Jordan's total estimate is higher than Allstate's: $22,634.08 compared to $19,132.24. *Id.* But Mr. Jordan's estimate includes costs to repair interior water damage and damage to the fascia and soffit of the dwelling roof, and Allstate's does not. *Id.* Mr. Jordan's estimate also appears to include labor costs and rental equipment that Allstate's does not. *Id.*

At bottom, the differences in the estimates raise issues of fact about the comparability of the two estimates and about which estimate more accurately reflects the costs to repair the damages to Plaintiffs' property. *See Underwood v. Allstate Fire & Cas. Ins. Co.*, No. 4:16-cv-00962-O-BP, 2017

---

withheld this money because Defendants argue that Plaintiffs never submitted proof of repair. *Id.* at 9. But Plaintiffs nowhere claim that they are owed the recoverable depreciation money. Plaintiffs only argument is that Allstate undervalued the costs to repair their property. *See* Doc. 27-1, Pls.' Resp., 8–10.

[5] The repair costs cited for Allstate's estimates are the costs before depreciation was deducted. *See* Doc. 26, Defs.' App., Ex. C.

WL 4466451, at *3 (N.D. Tex. Sept. 19, 2017) (noting that a $55,000 difference[6] between Allstate's estimate and the plaintiff's estimate would create an issue of fact about the proper amount paid). Thus, because Plaintiffs have produced more than a "metaphysical doubt" about whether Allstate underpaid them for their damages, summary judgment is denied. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

2. Failure to Pay for Damages

Plaintiffs next claim that Allstate breached the insurance policy by failing to pay them for several items damaged by the wind and hail storm. Doc. 27-1, Pls.' Br., 10–12. There are some discrepancies in the record about what these alleged damages are. In their Motion, Defendants assert that Plaintiffs claimed they sustained damage to their chimney, interior water damage to their home and garage, and damage to a patio chair and heater that Allstate failed to pay for. Doc. 25, Defs.' Br., 9–10. Although Plaintiffs claim damage to the chimney in their Original Petition, they do not allege damage to the chimney in their Response to Defendants' Motion, in Ms. Padilla's affidavit, or in their responses to Defendants' interrogatories. *See* Doc. 1, Notice of Removal, Ex. B1. Similarly, while Plaintiffs claim damage to a patio chair and heater in their responses to Defendant's interrogatories, and Allstate's Claim History Report indicates Plaintiffs made a supplemental claim for damage to these patio items, Plaintiffs do not claim damage to those items in Ms. Padilla's affidavit or in their Response to Defendants' Motion. *See* Doc. 26, Defs.' App., Ex. F3; *id.* at Ex. G. In their Response, Plaintiffs claim that Allstate failed to pay them for alleged water damage to their living room and damage to the fascia and soffit of the dwelling roof. Doc. 27-1, Pls.' Br., 9. Therefore, the Court will

---

[6] Although the difference in estimates is much less here than in *Underwood*, the principle that a disparity between estimates creates an issue of fact remains the same.

consider only if there are genuine issues of fact about whether the plaintiffs sustained interior water damage and damage to the fascia and soffit of the dwelling roof that Allstate should have but did not pay them for.

      *i.*      *Interior water damage*

Allstate argues that because the plaintiffs did not claim any water damage when they filed their claim and because Plaintiffs allegedly refused to allow Mr. Hohlier into their house to assess the alleged water damage, Allstate did not breach the contract by failing to pay Plaintiffs for the water damage. Doc. 25, Defs.' Br., 9. Defendants' argument rests on the premise that Allstate was not required to pay Plaintiffs for the water damage to their home; Defendants do not argue that Plaintiffs did not sustain water damage to their home. And in fact, Plaintiffs' evidence suggests there was water damage. *See* Doc. 27-2, Pls.' App., Ex. A; *id.* at Ex. B. Mr. Jordan's estimate includes $2883.45 to repair water damage to the living room, and Ms. Padilla asserts in her affidavit that water seeping through the roof after the wind and hail storm caused damage to her living room. *Id.* The Plaintiffs claim Allstate breached the insurance policy by failing to pay for this damage.

Given, as mentioned, that the only element of Plaintiff's contract claim at issue here is whether Allstate breached the contract, Allstate is entitled to summary judgment if it can demonstrate that there is no dispute that, as a matter of law, Allstate did not breach the insurance policy. Fed R. Civ. P. 56(a). As the summary-judgment movant, Allstate bears the burden of demonstrating it is undisputed that its failure to pay for the water damage did not constitute a breach of contract. *Id.* But Allstate fails to point to any provision in the contract that absolves Allstate from paying damages when the insured allegedly obstructs the adjuster from assessing damages. In its Motion, Allstate includes several provisions of the policy it describes as "relevant to its defense," but

it does not connect these provisions to any specific defense. Doc. 25, Defs.' Br. 4–6. Allstate includes provisions requiring the insured to "[g]ive [Allstate] a detailed list of the damaged, destroyed, or stolen property," and absolving Allstate of any duty to provide coverage if the insured fails to give Allstate a list of damaged property and that failure is prejudicial to Allstate. *Id*. at 5. But to the extent Allstate argues that under these provisions Plaintiffs' initial failure to claim water damage absolves Allstate of providing coverage, Allstate's argument fails. The policy absolves Allstate of its duty only when the insured's failure to comply is prejudicial, but Allstate has not alleged it was prejudiced. Therefore, the relevance of Ms. Padilla's alleged refusal[7] to Allstate's defense to the breach of contract claim is unclear and still in dispute. Thus, summary judgment is denied.

### ii. *Damage to the fascia and soffit*

Plaintiffs claim that their dwelling roof sustained damage to the fascia and soffit for which Allstate did not pay them Doc. 27-1, Pls.' Br., 10. Mr. Jordan's estimate includes $1200.78 to repair damages to the fascia and soffit. Doc. 27-2, Pls.' App., Ex. B. Although Mr. Hohlier's estimate includes costs to repair various parts of the dwelling roof, his estimate does not use the terms fascia or soffit. See Doc. 26, Defs.' App., Ex. C. Thus, it is unclear whether Mr. Hohlier's estimate includes costs to repair these parts of the dwelling roof. Therefore, because Plaintiffs have raised a genuine issue of fact about whether Allstate should have but did not pay Plaintiffs for damages to the fascia and soffit of their dwelling roof, summary judgment is denied.

B.   *Extra-Contractual Tort Claims*

---

[7] Nor is it clear whether Ms. Padilla refused entry to Mr. Hohlier. But because the materiality of Ms. Padilla's alleged refusal is in dispute, and only disputes over issues of material fact are relevant to motions for summary judgment, the Court declines at this time to examine the parties' arguments regarding Ms. Padilla's refusal.

Defendants next seek summary judgment on Plaintiffs' extra-contractual tort claims. Doc. 25, Defs.' Br., 10–11. These claims include: (1) violations of §§ 541.060(a), 542.055, 542.056, 542.058, and 542.060 of the Texas Insurance Code; (2) common law fraud and conspiracy to commit fraud; and (3) breach of the duty of good faith and fair dealing. *See* Doc. 1, Notice of Removal, Ex. B1. Defendants assert that these claims cannot stand if the breach of contract claim fails. Doc. 25, Defs.' Br., 10. Specifically, Defendants claim that the Texas Supreme Court has held that a plaintiff cannot maintain extra-contractual claims arising from denial of policy benefits when there is no finding that the insurer breached the policy agreement. *Id.* at 10–11. Plaintiffs respond that the rule Defendants urge on the Court applies only when there is a finding that the damages sought were not covered under the policy. Doc. 27-1, Pl.'s Br., 14–15. Thus, because damages from wind and hail are covered under Plaintiffs' policy, that rule is inapplicable here. *Id.*

The Court declines to examine the scope of the Texas Supreme Court's rule. Defendants' only argument is that Plaintiffs' extra-contractual claims cannot survive without a viable breach of contract claim. But the Court finds that Plaintiffs' breach of contract claims are viable. Thus, Defendants have not demonstrated they are entitled to judgment on Plaintiffs' extra-contractual claims as a matter of law. Summary judgment is **DENIED**.

## IV.

## CONCLUSION

For the aforementioned reasons, the Court **DENIES** Defendants' Motion for Summary Judgment, Doc. 24.

SO ORDERED.

SIGNED: March 9, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE